IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CORDELL E. MARTIN, | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT AND JURY DEMAND** |
| | ) | |
| FATHER FLANAGAN'S BOYS' HOME, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff, by and through his attorneys, and for his causes of action against the Defendant hereby states the following:

**PARTIES-VENUE-JURISDICTION**

1. Plaintiff CORDELL E. MARTIN is a resident of Omaha, Douglas County, Nebraska.

2. Defendant FATHER FLANAGAN'S BOYS' HOME is a Nebraska corporation authorized to conduct business in Nebraska with its principal office located in Boystown, Douglas County, Nebraska.

3. This Court has original jurisdiction over the claims arising under Federal law and concurrent jurisdiction over the state law claims. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331 and the Court's pendent claim jurisdiction under 28 U.S.C. §1367(a).

4. Venue is proper in this district under 28 U.S.C. §§1391(b) and (c).

5. On or about June 27, 2022, the Nebraska Equal Opportunity Commission issued their determination with respect to Plaintiff's charges, NEB 1-21/22-10-52289-RS.

6. On or about August 1, 2022, less than 90 days prior to the filing of this Complaint, the U.S. Equal Employment Opportunity Commission issued Plaintiff a Notice of Right to Sue on

1

charge number 32E-2022-00023.

## FACTUAL BACKGROUND

7. Plaintiff started working for the Defendant on June 3, 2019 as an entry level behavioral health tech. After seven months working on the job, Plaintiff was promoted to a shift manager position. Plaintiff did not meet the educational requirements for the position, but Defendant promoted him because of his exemplary work performance.

8. On April 14, 2020, Plaintiff suffered a workers' compensation injury to his head and spine when he was assaulted by a juvenile patient while working for Defendant.

9. During his employment with Defendant, Plaintiff suffered from one or more physical or mental impairments that substantially limited his major life activities of walking, standing, sleeping, eating, speaking, seeing, hearing, learning, concentrating, thinking, communicating and lifting. Plaintiff's physical or mental impairments also substantially limited his major bodily functions of his muscoskeletal, cardiovascular, neurological and brain systems.

10. In January 2021, Defendant required Plaintiff to get an Independent Medical Examination from its chosen workman's compensation physician.

11. Defendant received the report from its workers' compensation physician on February 12, 2021, which cleared Plaintiff to return to work with no restrictions related to his work injury. However, Plaintiff's treating physician had not cleared him to return to work due to his ongoing disability resulting from the work injury.

12. Leave Specialist for the Defendant, Derek Fiala called to inform Plaintiff that he was to return to work on February 15, 2021, or face disciplinary action, so Plaintiff returned to work on February 15, 2021.

13. On February 15, 2021, Plaintiff requested a reasonable accommodation to Assistant

Director of Residential Treatment, Allison Howard and his direct supervisor, Jessica Godsey to lessen the physical demands of his position due to his ongoing disbility from his work injury.

14. Plaintiff also requested a reasonable accomodation of an additional week of leave to allow him time to see his treating doctor to discuss the IME report of February 12, 2021.

15. Plaintiff was denied the additional week off work and further informed if he could not perform the physical demands then he should resign.

16. Plaintiff requested to work a different position, but was told by Defendant there were no openings.

17. On February 22, 2021, Plaintiff worked for four hours before learning from his neurologist's office staff that Plaintiff was not cleared to return to work and that his neurologist had sent a letter to Defendant directly stating he was to be off work until April 15, 2021.

18. Plaintiff notified Ms. Godsey of his doctor's opinion and asked if he needed to notify anyone else. Ms. Godsey told Plaintiff he could just text her that he was going to miss work.

19. On February 23, 2021, Mr. Fiala called Plaintiff asking why he was back on leave after having initially returned to work. Plaintiff informed him he had been threatened with disciplinary action if he did not return to work on February 15th, but left to go back on leave when he was notified by his treating physician that he was not cleared to return to work yet.

20. Plaintiff again requested Defendant to accommodate his disability and was told to look at the available jobs on his own time to see if he qualified for any of them. Plaintiff looked at open positions and identified several for which he would like to be considered and that he was qualified for. Plaintiff called Senior Generalist, Leah Woods, left a voicemail, and followed up with an email asking if Defendant would waive the education requirement for an open position as they had done for Plaintiff in his current position. Plaintiff never received a response to his inquiry

regarding the requested accomodation to be placed in open positions.

21. On Saturday, February 27, 2021, Plaintiff received a letter from Ms. Woods, dated February 25, 2021:

    a. Ms. Woods' letter stated that Plaintiff was required to return to work on February 15, 2021 after being cleared to work by the workers' compensation physician.

    b. Ms. Woods' letter incorrectly stated Plaintiff did not call in or report to work from February 16th to 19th. Plaintiff worked February 16th, and he did notify Godsey that he was not able to work February 17th-19th.

    c. Ms. Woods claimed in the letter that holding Plaintiff's position open was causing Defendant undue hardship so they were going to fill his position. However, Defendant had already filled Plaintiff's position during his initial leave of absence on July 17, 2020 with Alex Podany, so Defendant was not holding Plaintiff's position open.

    d. Ms. Woods ended the letter telling Plaintiff to contact Defendant by March 4, 2021 about any alternative positions.

22. On March 1, 2021, Plaintiff called Ms. Woods and left a voicemail asking her to return his call about her letter and any possible accommodations.

23. On March 3, 2021, Plaintiff's attorney sent an email to Ms. Woods alleging discrimination and asked for Defendant, or its attorney to call and discuss all available reasonable accommodations.

24. On March 9, 2021, Defendant's attorney replied stating Defendant could not accommodate an indefinite leave of absence.

25. On March 11, 2021, Plaintiff's attorney sent Defendant's attorney another request

for reasonable accommodation stating Plaintiff's leave was not indefinite as he was cleared to return to work on April 15, 2021, that Plaintiff was being discriminated and retaliated against, and requesting Defendant continue to engage in the interactive process. No response from Defendant, or its attorney, was received before Plaintiff was terminated.

26. Upon information and belief, Plaintiff's employment with Defendant was terminated on March 18, 2021 due to the COBRA paperwork he received indicating his insurance coverage ended on March 18, 2021.

27. Prior to termination, Plaintiff's job performance was satisfactory.

28. At the time of his termination, Plaintiff was earning $41,265.64 annually working approximately 40 hours per week. As of the date of this filing, Plaintiff's lost wages resulting from Defendant's wrongful conduct are in excess of $58,000.00.

29. As a result of Defendant's wrongful conduct, Plaintiff suffered lost wages, compensatory damages, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and has also incurred attorney's fees and other costs that are continuing.

## COUNT I
## DISABILITY DISCRIMINATION
## 42 U.S.C. §§12101 et seq. ("ADA")

30. Plaintiff hereby incorporates paragraphs 1 through 29 as if fully set forth herein and states:

31. Defendant is and was at all times material an "employer" within the meaning of under 42 U.S.C. §12111.

32. Plaintiff is and was disabled within the meaning of the ADA, as amended.

33. Defendant regarded Plaintiff as disabled by an actual or perceived impairment that substantially limits a major life activity.

34. At all times relevant, Plaintiff suffered from an impairment that substantially limited one or more of his major life activities and major bodily functions.

35. At all times relevant, Plaintiff was able to perform the essential functions of his job, with or without reasonable accommodation.

36. Defendant discriminated against Plaintiff because of his disability and altered a term, condition and/or privilege of his employment, including but not limited to harassing Plaintiff about his disability and termination of his employment.

37. Defendant failed to accommodate Plaintiff's disability in violation of the ADA.

38. Defendant failed to engage in good faith in an interactive process with Plaintiff to assist his in accommodating his disability in violation of the ADA.

39. Plaintiff's disability was a motivating factor in such discrimination, failure to accommodate and failure to engage in the interactive process.

40. The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct Defendant are subject to punitive damages.

41. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

## COUNT II
## RETALIATION
## 42 U.S.C. §12203

42. Plaintiff hereby incorporates paragraphs 1 through 41 as if fully set forth herein and states:

43. During his employment, Plaintiff engaged in protected activity, including but not limited to exercising his rights under the ADA, by requesting a disability accommodation and internally complaining about disability discrimination.

44. Defendant took adverse employment action against Plaintiff, including but not limited to subjecting him to harassment, refusing to accommodate him resulting in lost wages and terminating his employment.

45. There is a causal connection between Plaintiff's participation in protected activity and Defendant's adverse action against him.

46. The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct Defendant are subject to punitive damages.

47. As a result of Defendant's retaliation, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

## COUNT III
## WRONGFUL TERMINATION IN VIOLATION
## OF NEBRASKA PUBLIC POLICY

48. Plaintiff hereby incorporates by reference paragraphs 1 through 47 and states:

49. During his employment, Plaintiff participated in one or more protected activities arising under Nebraska Workers' Compensation statutes, including but not limited to making a claim for benefits payable by Defendant.

50. Defendant terminated Plaintiff's employment.

51. A causal link existed between Plaintiff's termination and his participation in his

participation in protected activities under Nebraska Workers' Compensation statutes.

52. As a result of Defendant's retaliatory discharge, Plaintiff has suffered damages in the form of lost wages and benefits, loss of future pay and benefits, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life. Plaintiff has incurred, and will continue to incur, attorney's fees and costs in this matter.

## DAMAGES

53. Plaintiff hereby incorporates by reference paragraphs 1 through 52 and states:

54. As a result of Defendant's discrimination, and retaliation, Plaintiff has suffered damages and seeks the following relief:

   a. Lost wages and benefits to the time of trial;

   b. Front pay;

   c. Compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

   d. Punitive damages under Federal law;

   e. Attorney's fees, expert witness fees and other reasonable costs; and,

   f. Pre-judgment and post judgment interest.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate him for his injuries and damages, for all his general, special and punitive damages, for costs, attorney's fees, interest and for such other relief as just and equitable.

Plaintiff demands a trial by jury.

Dated: October 26, 2022.

CORDELL E. MARTIN, Plaintiff

BY: s/ Jennifer Turco Meyer
Jennifer Turco Meyer, #23760
Of Dyer Law, P.C., LLO
2611 S. 117th Street
Omaha, Nebraska 68144
(402) 393-7529
(402) 391-2289 facsimile
Jennifer@dyerlaw.com
Attorney for Plaintiff